MORGAN, LEWIS & BOCKIUS LLP
BARBARA J. MILLER, State Bar No. 167223
JENNIFER WHITE, State Bar No. 166504
MARIA GUTIERREZ, State Bar No. 209995
JOHN HAYASHI, State Bar No. 211077
5 Park Plaza, Suite 1750
Irvine, CA 92614
Tel: 949.399.7000
Fax: 949.399.7001
barbara.miller@morganlewis.com
jennifer.white@morganlewis.com
maria.gutierrez@morganlewis.com
jhayashi@morganlewis.com

Attorneys for Defendant
DAIICHI SANKYO, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONOVAN LUCAS, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>DAIICHI SANKYO COMPANY, INC.; and DOES 1 to 50, Inclusive,<br><br>    Defendant. | Case No. 11CV-0772 CW<br><br>**DEFENDANT DAIICHI SANKYO,[1] INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA (28 U.S.C. § 1404(a)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 28, 2011<br>Time: 2:00 p.m.<br>Judge: Hon. Claudia Wilken<br>Courtroom: 2<br><br>Complaint Filed: December 7, 2010<br>Trial Date: None Set |

---

[1] The Complaint improperly names Daiichi Sankyo Company, Inc. as the Defendant in this matter. Daiichi Sankyo Company, Inc. is an improperly named defendant as it is the Japanese parent company of the U.S. entity Daiichi Sankyo, Inc., which should have been pled as the defendant. On January 14, 2011, the Court granted Plaintiff's motion to amend the Defendant to Daiichi Sankyo, Inc.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB1/66556378.4

Case No. 11CV-0772 CW
DEF.'S MOTION TO TRANSFER VENUE

**TO PLAINTIFF DONOVAN LUCAS AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 28, 2011 at 2:00 p.m., or as soon after that time as counsel may be heard, in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Suite 400S, Oakland, California, Defendant Daiichi Sankyo, Inc. ("DSI") will, and hereby does, move this Court, pursuant to 28 U.S.C. § 1404(a), for an order transferring this case to the United States District Court for the Central District of California.

As explained more fully in the attached memorandum, pursuant to 28 U.S.C. § 1404(a), this case should be transferred to the Central District of California for the convenience of the parties and witnesses and in the interests of justice.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Craig Mangean and its attachment, all records on file with the Court relating to this matter, and any and all argument provided by counsel at the hearing.

Dated: March 16, 2011                MORGAN, LEWIS & BOCKIUS LLP

By: _____/s/ Barbara J. Miller_____
Barbara J. Miller
Attorneys for Defendant
DAIICHI SANKYO COMPANY, INC.

---

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB1/66556378.4

1

Case No. 11CV-0772 CW
DEF.'S MOTION TO TRANSFER VENUE

**MEMORANDUM OF POINTS & AUTHORITIES**

## I. INTRODUCTION

Plaintiff Donovan Lucas's ("Lucas's" or "Plaintiff's") lawsuit against his former employer Daiichi Sankyo, Inc. ("DSI") should be transferred to the Central District of California because Lucas and the majority of putative class members he seeks to represent are located in the Central District. Lucas lived and worked in the Central District, and he has *no connection whatsoever to the Northern District of California*. Lucas claims that he and other DSI sales representatives were misclassified as exempt. The central inquiry to adjudicate this claim is how Lucas – and the putative class member sales representatives – spent their work time with DSI. Relevant witnesses are those with knowledge of what Lucas and the putative class members did at work. These witnesses and associated documents are necessarily located in the sales territory of Lucas and the putative class members, which again primarily lie within the Central District of California. Accordingly, this case should be transferred to the Central District pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice.

## II. FACTUAL BACKGROUND

### A. Daiichi Sankyo

DSI, a pharmaceutical company which is the U.S. subsidiary of the Japanese corporation DAIICHI SANKYO COMPANY, LTD,[2] began operating in the U.S. in 2006. Mangean Decl. ¶ 2.[3] The U.S. organization, which includes U.S. commercial operations and global clinical development, is incorporated in Delaware but is headquartered in New Jersey. More specifically, the Daiichi Sankyo Administrative and Commercial ("DSAC") Division maintains its corporate headquarters in New Jersey, where the vast majority of the management personnel for the DSAC Division are located. Mangean Decl. ¶ 2. In addition, DSI's global clinical development organization, Daiichi Sankyo Pharma Development ("Daiichi Pharma"), is located in New Jersey. Mangean Decl. ¶ 2.

---

[2] DAIICHI SANKYO CO., LTD. was established in 2005 with the merger of two leading Japanese pharmaceutical companies, Daiichi Pharmaceutical Co., Ltd. and Sankyo Co., Ltd. Daiichi Sankyo.
[3] "Mangean Decl." refers to the Declaration of Craig Mangean which is being filed concurrently herewith.

Daiichi Sankyo Company, Ltd. maintains a portfolio of marketed pharmaceuticals for hypertension, hyperlipidemia, and bacterial infections around the world and also focuses on the discovery of new therapies, including novel oncology therapies. Mangean Decl. ¶ 3. Daiichi Sankyo, Inc. maintains a portfolio of marketed pharmaceuticals for hypertension, hyperlipidemia, diabetes and acute coronary syndrome within the U.S. Some of the products it markets in California include Azor®, Benicar®, Welchol®. Tribenzor®, and Effient®, which are indicated for the treatment of hypertension (Azor®, Benicar®, Tribenzor®), the reduction of LDL cholesterol and A1C blood sugar (Welchol®), and the reduction of the rate of thrombotic cardiovascular events in patients with acute coronary syndrome that was treated with angioplasty (Effient®). Mangean Decl. ¶ 4.

### B. DSI Sales Representatives

DSI employs representatives to inform physicians about DSI's products and thereby convince the physicians to write prescriptions for those products. Sales representatives are categorized by the group of health care providers to whom they sell particular groupings of products — *e.g.*, products marketed to primary care physicians, hospital-marketed products, and products marketed to specialists, such as cardiologists.[4] The representatives are also assigned particular geographical territories. Representatives of the same type (e.g. primary care vs. specialty) in nearby geographies are combined into district groups. Each district has a district manager. The representatives in that district regularly meet in a group to discuss products and sales with their district manager. The districts and district managers are supervised by regional directors. Mangean Decl. ¶ 7.

Sales representatives' job duties include analyzing information regarding prescription-writing habits of key physicians on their call lists and visiting the offices of these key physicians. DSI does not maintain any office space for employees, such as sales representatives, in

---

[4] At DSI, the sales professional tiered position categories include the following titles: Sales Representative, Sales Representative II, Sales Specialist, Senior Sales Specialist, Senior Sales Professional, CV Specialty Sales Representative, Senior CV Specialty Sales Representative, Hospital Representative, Senior Hospital Sales Representative, and Hospital Sales Specialist. Mangean Decl. ¶ 6.

California. Mangean Decl. ¶ 8. Instead, the sales representatives work primarily using mobile laptop computers and home offices. Mangean Decl. ¶ 8.

Plaintiff Donovan Lucas worked as a primary care sales representative with a territory in Palm Springs from July 2008 to November 2010. His territory never embraced anywhere in this District. Mangean Decl. ¶ 12. For his entire tenure, Lucas worked only in the Palm Springs area and worked only for one district manager *who was also based in Palm Springs.* Mangean Decl. ¶ 12. Lucas's Complaint confirms that he resides in Palm Desert. Compl. ¶ 7.

Lucas did not work in the Northern District. Lucas, moreover, does not allege in his Complaint that he lived in this District or had any other connection to the District which might justify his choice of forum. In fact, he endeavors to side-step the locus of his operations for Defendant by broadly asserting that his geographic territory was in California. Compl. ¶ 7.

### C. The Putative Class

Lucas seeks to represent a class of: "All persons who are employed or have been employed as "Pharmaceutical Representatives" by defendants in the State of California and for at least 4 years prior to the filing of this action." Compl. ¶ 21. He alleges that "Pharmaceutical Representatives" include those holing titles of: Sale Representative, Senior Sales Representative, Executive Sales Representative, and Senior Executive Sales Representative. Compl. ¶ 2.

As of the filing date of these papers, there have been about 206 sales representatives in California during the period potentially at issue in this case (December 2006 through present). Of these, about 107 or *about fifty-two percent (52%) were located in the Central District of California.* By contrast, only about 44 or about twenty-one percent (21%) were located in the Northern District of California. Additionally, 13 were located in the Southern District and 42 were located in the Eastern District. As of the filing date of these papers, nine of the twenty district managers in California are located in the Central District of California. This is substantially more than the number of district managers in any other California judicial district. Mangean Decl. ¶ 10.

### D. Witnesses And Documents In This Case Are Disbursed Throughout California, And In New Jersey, And Not In The Northern District.

Lucas claims that he was misclassified as an exempt employee and that other sales representatives in California were misclassified as exempt employees. Each representative's classification requires an individualized, fact-specific inquiry as to what the representative does in the course of his or her job and how much time he or she spends on particular work activities. However, every witness and document that does exist with respect to Lucas's claim that he was misclassified resides in or around Palm Springs, California, the location of his territory, or in New Jersey. Thus, any witnesses or documents with respect to whether Lucas was misclassified are not in the Northern District.

To the extent that any witness has information that is generally applicable to the putative class, those witnesses would have to be located in New Jersey, where DSI is headquartered. Mangean Decl. ¶¶ 2, 11, 13. With respect to the claims of the putative class members, since the majority of those putative class members as these papers are filed are located in the Central District, the majority of the relevant witnesses are located in the Central District. Moreover, the number of putative class members within the Central District is more than double the number of putative class members in the Northern District. Hence, the concentration of relevant witnesses in the Central District vastly surpasses that in the Northern District.

### E. This Lawsuit

Plaintiff Lucas, represented by attorneys from the Los Angeles area and New York, filed this lawsuit in Alameda County Superior Court – hundreds of miles from his home in Palm Desert – on or about December 7, 2010. On February 18, 2011, Defendant DSI removed the action to federal court based upon jurisdiction under the Class Action Fairness Act ("CAFA").

### III. ARGUMENT

Under 28 U.S.C. § 1404(a), a matter may be transferred "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To transfer a case under Section 1404(a), a party must first show that the transferee district is one where the action might have been brought. *See Peralta v.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB1/66556378.4   4   Case No. 11CV-0772 CW
DEF.'S MOTION TO TRANSFER VENUE

*Countrywide Home Loans, Inc.*, No. C 09-3288 PJH, 2009 U.S. Dist. LEXIS 112387, at *7 (N.D. Cal. Nov. 16, 2009) (granting motion to transfer to the Central District of California). The court then assesses various factors related to convenience and the interest of justice. *Id.* (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)). Because this case could have been brought in the Central District, and because there is no nexus of any nature to the Northern District (Lucas did not work and does not live in the Northern District), the interests of justice warrant a transfer under 28 U.S.C. § 1404(a) to the Central District.

### A. This Action Could and Should Have Been Brought In the Central District of California.

A district court is a forum where the action "might have been brought" if it has subject matter jurisdiction, personal jurisdiction over defendant, and venue would have been proper. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *Commercial Lighting Prods., Inc. v. U.S. Dist. Ct.*, 537 F.2d 1078, 1079 (9th Cir. 1976). Here, all three criteria are met.

The Central District, like this Court, has subject matter jurisdiction over this case under the Class Action Fairness Act ("CAFA").

The Central District also has personal jurisdiction over DSI, and venue would have been proper in the Central District, because products of DSI, the sole defendant in this case, were sold in the Central District. *See* 28 U.S.C. § 1391(a)(1) (a civil action where jurisdiction is founded only on diversity citizenship may be brought in a judicial district where any defendant resides, if all defendants reside in the same State); 28 U.S.C. § 1391(c) (for purposes of venue, a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced).

### B. Transferring This Case Will Serve The Convenience Of The Parties And Witnesses, And Be In The Interest Of Justice.

"Courts apply a multi-factor balancing test to determine if transfer would serve the convenience of the parties and witnesses, and would be in the interest of justice." *Peralta*, 2009 U.S. Dist. LEXIS 112387, at *19 (citing *Jones*, 211 F.3d at 498-99)). Factors that the Court may consider include the following: (1) the plaintiff's choice of forum; (2) convenience of the parties;

(3) convenience of the witnesses; (4) relative ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *Id.* at *20 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). Most of these factors favor transfer to the Southern District, and any factors that do not favor transfer are neutral. ***No factor favors venue in the Northern District.***

### 1. Plaintiff's Forum Choice Gets No Deference Here.

While generally a plaintiff's choice of forum is entitled to some deference, the plaintiff's choice of forum is given less weight when the plaintiff purports to represent a class. *Peralta*, 2009 U.S. Dist. LEXIS 112387, at *20 (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). If the plaintiff purports to represent a class, the court must look to whether the operative facts occurred within the forum and whether the forum has an interest in the parties or subject matter; if not, the plaintiff's choice is entitled to minimal consideration. *Id.* at *20-*21 (affording plaintiff's forum choice "not a significant amount" of deference because plaintiff purported to represent a class, and only one of the three plaintiffs resided in, and thus had significant contacts with, the forum district, but there were no other substantial ties to the district) (citing *Lou*, 834 F.2d at 739)); *see also Vernon v. Qwest Comm. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1237 (W.D. Wash. 2009) (giving the named plaintiff's forum choice little weight in the transfer analysis because they purported to represent a class of residents of other districts); *Johns v. Panera Bread Co.*, No. 08-1071 SC, 2008 U.S. Dist. LEXIS 78756, at *4-*5 (N.D. Cal. July 21, 2008) (transferring case alleging wage and hour violations on behalf of putative nationwide FLSA collective and putative California-wide class, noting that in a class action a plaintiff's forum choice is given less weight).

For example, in *Foster v. Nationwide Mutual Insurance*, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007), this Court granted a motion to transfer a putative class action to Ohio where no named plaintiffs lived or worked in the Northern District of California, Ohio was more convenient to Defendant's witnesses and the majority of the class members were located closer to Ohio than to the Northern District of California. *Id.* at *3-*5. The Court noted that forum

shopping was suggested both by the absence of named plaintiffs from the Northern District of California, and in particular, the lead named Plaintiff's location in Arkansas, extremely distant from the Northern District of California. *Id.* at *3.

Similarly, in *Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 1302985 (N.D. Cal. May 3, 2007), this Court gave some but less deference to the plaintiff's choice of forum because the case was a putative class action. Noting that some key events took place in the Northern District of California, the Court granted the motion to transfer venue to New Jersey because the Defendant was in New Jersey, the named plaintiff was closer to New Jersey, and more putative class members were near New Jersey. *Id.* at *2-3.

Here, Lucas's choice to file this case in the Northern District should receive no deference because Lucas purports to bring a California-wide class action where only a small minority of putative class members are in the District. Compl. ¶ 21. Moreover, Lucas does not reside in and never worked in the Northern District. Compl. ¶ 7 (alleging that he "resides in Palm Desert".) Lucas does *not* allege that at any relevant time he lived or worked in the Northern District. Moreover, the number of putative class members – about 52% – located in the Central District vastly exceeds the number in the Northern District of California – about 21% of the putative class. Indeed, in light of these circumstances (including the location of Lucas's counsel in the Central District of California), it is very curious why this action was filed in the Northern District.

Because Lucas's case has no ties to this District whatsoever, and he seeks to represent a state-wide class, his choice of the forum should not receive deference. *See Forrand v. Federal Express Corp.*, No. C07-4674 THE, 2008 U.S. Dist. LEXIS 10858, at *10 (N.D. Cal. Jan. 31, 2008) ("Plaintiffs' chosen forum is entitled to minimal deference in this case because the named plaintiffs do not reside in this district; this case was brought as a class action; the facts giving rise to the named plaintiffs' claims all arose in other districts; and the evidence indisputably indicates an attempt to forum shop."); *see also Lucarelli v. DVA Renal Healthcare, Inc.*, No. 2:07-cv-1217-RLH-GWF, 2008 U.S. Dist. LEXIS 7772, at *12 (D. Nev. Jan. 16, 2008) (granting transfer motion, and noting that plaintiff's forum choice was entitled to little deference where the "operative facts" of the case did not occur in Nevada).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB1/66556378.4

7

Case No. 11CV-0772 CW
DEF.'S MOTION TO TRANSFER VENUE

**2. The Convenience Of The Parties Favors Transfer, As Lucas Lives In Southern California, And Most Putative Class Members Are In Southern California.**

The convenience of the parties favors transfer. Lucas resides in Palm Desert, California, which is located *nearly 500 miles* away from this Court, within the Central District, and *less than 70 miles* from the nearest Central District courthouse. Lucas's manager, a key witness, resides and works in the Central District. Thus, Lucas's Southern California residence alone suggests that it is more convenient for him to litigate in the Central District, and that his choice of this forum is suspicious.

Also relevant to the convenience of the parties in a putative class action is the location of the putative class members. Here, the majority of the putative class member Sales Representatives in California, like plaintiff Lucas himself, sold DSI products in the Central District. (*See* Mangean Decl. ¶ 9, Ex. A (chart showing Sale Representatives' Locations).) By contrast, only about 21% of Sales Representatives sold product from locations within the jurisdiction of the Northern District. (*Id.*) As of the date of filing, more California district managers are located in the Central District than any other judicial district. Indeed, the majority of witnesses who have knowledge of the sales representatives work duties and hours are located in the Central District.

As to the convenience of the sole defendant DSI, while DSI "resides" in both the Northern and the Central Districts, it is far more convenient for DSI to litigate this case in the Central District, where the majority of its supervisors, managers and witnesses relevant to Lucas's claims and those of the majority of the putative class members are located.

Given these facts, the convenience of the parties favors transfer. The facts certainly do not favor venue in this Court, where the named plaintiff does not reside and did not sell DSI products.

**3. Other Factors Are Neutral Or Slightly Favor Transfer.**

Other relevant factors include the convenience of the witnesses, relative ease of access to the evidence, familiarity of each forum with the applicable law, and any local interest in the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB1/66556378.4        8        Case No. 11CV-0772 CW
DEF.'S MOTION TO TRANSFER VENUE

1  controversy. *Peralta*, 2009 U.S. Dist. LEXIS 112387, at *20. Here, each of these factors is
2  neutral or favors transfer.

3        The convenience of the witnesses favors transfer, as most witnesses relevant to Lucas's
4  individual claim that he was misclassified as exempt are in the Palm Springs area, the location of
5  Lucas's territory. Witnesses regarding the misclassification claims of absent putative class
6  members obviously will be disbursed throughout the State of California, in the locations where
7  those individuals sold DSI products, but mostly in the Central District California. Mangean Decl.
8  ¶ 9, Ex. A. To the extent that there are witnesses, if any, that have general information regarding
9  the alleged putative class, those individuals obviously would reside in the District of New Jersey
10 where DSI is headquartered.

11       The relative ease of access to the evidence also favors transfer. Documents relevant to
12 Lucas's claims that he in fact was misclassified will include his personnel file, sales activity
13 records, compensation records, any written communications with him, and any written instruction
14 or training he may have received regarding selling DSI products. These documents are all located
15 either in Palm Springs, California, or in New Jersey. Similar documents relevant to putative class
16 members will be located throughout California, in the locations where these individuals sold DSI
17 products, but mostly in the Central District.

18       Local interest in the controversy also favors transfer. The Central District has a stronger
19 interest in this controversy because Lucas resides in the Central District but putative class
20 members reside throughout the State, and the defendant is headquartered in New Jersey, but has
21 its products sold in both forums.

22       Familiarity of each forum with the applicable law is neutral: this Court and the Central
23 District are equally familiar with California law.

24 **IV.  CONCLUSION**

25       This case should be transferred to the Central District of California. Plaintiff Lucas is
26 located in the Central District of California. His counsel is located in the Central District of
27 California. The majority of putative class members are located in the Central District of
28 California. The majority of witnesses are located in the Central District of California. It is more

convenient for DSI to litigate in the Central District of California. And, the Central District of California has a greater interest in the outcome of the case at bar. According, Defendant DSI respectfully requests that this Court transfer the instant action to the Central District of California pursuant to 28 U.S.C. §1404(a).

Dated: March 16, 2011

MORGAN, LEWIS & BOCKIUS LLP
BARBARA J. MILLER

By    /s/ Barbara J. Miller
     Barbara J. Miller
     Attorneys for Defendant
     DAIICHI SANKYO, INC.

# PROOF OF SERVICE

I am a resident of the State of California, County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 5 Park Plaza, Suite 1750, Irvine, California 92614.

On March 16, 2011, I served on the interested parties in this action the within document(s) entitled:

**DEFENDANT DAIICHI SANKYO, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA (28 U.S.C. § 1404(A)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[ X ]  **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]  **BY E-FILE:** I caused such documents to be transmitted by e-file with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| *By E-File:*<br>George R. Kingsley, Esq.<br>Eric B. Kingsley, Esq.<br>Liane L. Katzenstein, Esq.<br>Kingsley & Kingsley, APC<br>16133 Ventura Blvd., Suite 1200<br>Encino, CA 91436<br>Telephone: 818.990-8300<br>Facsimile: 818.990.2903<br>gkingsley@kingsleykingsley.com<br>eric@kingsleykingsley.com<br>lkatzenstein@kingsleykingsley.com | *Attorneys for Plaintiffs* |
| *By Mail:*<br>Charles Joseph, Esq.<br>Joseph & Herzfeld LLP<br>757 Third Avenue, 24th Floor<br>New York, NY 10017<br>Telephone: 212.688.5640<br>Facsimile: 212.688.2548<br>charles@JHLLP.com | |

[ X ]  **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on March 16, 2011, at Irvine, California.

*Kelly Raleigh*
Kelly Raleigh

DB1/66556378.4         1         Case No. 11CV-0772 CW
DEF.'S MOTION TO TRANSFER VENUE